TRACY L. WILKISON
Acting United States Attorney
CHRISTOPHER D. GRIGG
Assistant United States Attorney
Chief, National Security Division
ANIL J. ANTONY (Cal. Bar No. 258839)
Assistant United States Attorney
Deputy Chief, Cyber & Intellectual Property Crimes Section
DEVON MYERS (Cal. Bar No. 240031)
Assistant United States Attorney
Cyber & Intellectual Property Crimes Section
    1500 United States Courthouse
    312 North Spring Street
    Los Angeles, California 90012
    Telephone: (213) 894-6579/0649
    Facsimile: (213) 894-2927
    E-mail:    anil.j.antony@usdoj.gov
              devon.myers@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | No. 2:19-CR-00380-VAP-9 |
|---|---|
|     Plaintiff, | PLEA AGREEMENT FOR EKENE AUGUSTINE EKECHUKWU |
|         v. | |
| EKENE AUGUSTINE EKECHUKWU,<br>  aka "Ogedi Power,"<br>  aka "Power," | |
|     Defendant. | |

    1.    This constitutes the plea agreement between EKENE AUGUSTINE EKECHUKWU, also known as ("aka") "Ogedi Power," aka "Power" ("defendant"), and the United States Attorney's Office for the Central District of California (the "USAO") in the above-captioned case.  This agreement is limited to the USAO and cannot bind any other federal, state, local, or foreign prosecuting, enforcement, administrative, or regulatory authorities.

DEFENDANT'S OBLIGATIONS

2.   Defendant agrees to:

a.   At the earliest opportunity requested by the USAO and provided by the Court, appear and plead guilty to Count One of the Indictment in <u>United States v. EKENE AUGUSTINE EKECHUKWU</u>, CR No. 19-CR-00380-VAP-9, which charges defendant with Conspiracy to Engage in Money Laundering in violation of 18 U.S.C. § 1956(h).

b.   Not contest facts agreed to in this agreement.

c.   Abide by all agreements regarding sentencing contained in this agreement.

d.   Appear for all court appearances, surrender as ordered for service of sentence, obey all conditions of any bond, and obey any other ongoing court order in this matter.

e.   Not commit any crime; however, offenses that would be excluded for sentencing purposes under United States Sentencing Guidelines ("U.S.S.G." or "Sentencing Guidelines") § 4A1.2(c) are not within the scope of this agreement.

f.   Be truthful at all times with the United States Probation and Pretrial Services Office and the Court.

g.   Pay the applicable special assessment at or before the time of sentencing unless defendant has demonstrated a lack of ability to pay such assessments.

THE USAO'S OBLIGATIONS

3.   The USAO agrees to:

a.   Not contest facts agreed to in this agreement.

b.   Abide by all agreements regarding sentencing contained in this agreement.

2

c.   At the time of sentencing, move to dismiss the remaining counts of the Indictment as against defendant.  Defendant agrees, however, that at the time of sentencing the Court may consider any dismissed charges in determining the applicable Sentencing Guidelines range, the propriety and extent of any departure from that range, and the sentence to be imposed.

d.   At the time of sentencing, provided that defendant demonstrates an acceptance of responsibility for the offense up to and including the time of sentencing, recommend a two-level reduction in the applicable Sentencing Guidelines offense level, pursuant to U.S.S.G. § 3E1.1, and recommend and, if necessary, move for an additional one-level reduction if available under that section.

<u>NATURE OF THE OFFENSE</u>

4.   Defendant understands that for defendant to be guilty of the crime charged in Count One, that is, Conspiracy to Engage in Money Laundering, in violation of 18 U.S.C. § 1956(h), the following must be true:

a.   There was an agreement between two or more persons:

i.   to conduct a financial transaction involving property that represented the proceeds of wire fraud (in violation of Title 18, United States Code, Section 1343), bank fraud (in violation of Title 18, United States Code, Section 1344(2)) or mail fraud (in violation of Title 18, United States Code, Section 1341), where defendant knew that the property represented the proceeds of some form of unlawful activity, and defendant knew that the transaction was designed in whole or in part to conceal or disguise the nature, location, source, ownership, or control of the proceeds; or

3

1          ii.  to transport, transmit, or transfer, or attempt

2    to transport, transmit, or transfer, from a place in the United

3    States to or through a place outside the United States, a monetary

4    instrument or funds, which defendant knew represented the proceeds of

5    some form of unlawful activity, and defendant knew that the

6    transaction was designed in whole or in part to conceal or disguise

7    the nature, location, source, ownership, or control of the proceeds

8    of wire fraud (in violation of Title 18, United States Code, Section

9    1343), bank fraud (in violation of Title 18, United States Code,

10   Section 1344(2)) or mail fraud (in violation of Title 18, United

11   States Code, Section 1341); or

12          iii. to knowingly engage or attempt to engage in a

13   monetary transaction in the United States in criminally derived

14   property that had a value greater than $10,000 and was, in fact,

15   derived from wire fraud (in violation of Title 18, United States

16   Code, Section 1343), bank fraud (in violation of Title 18, United

17   States Code, Section 1344(2)) or mail fraud (in violation of Title

18   18, United States Code, Section 1341); and

19        b.  defendant became a member of the conspiracy knowing of

20   at least one of its objects and intending to help accomplish it.

21                                PENALTIES

22        5.  Defendant understands that the statutory maximum sentence

23   that the Court can impose for a violation of Title 18, United States

24   Code, Section 1956(h), as charged in this case, is: 20 years'

25   imprisonment; a 3-year period of supervised release; a fine of

26   $500,000 or twice the gross gain or gross loss resulting from the

27   offense, whichever is greatest; and a mandatory special assessment of

28   $100.

                                    4

6.    Defendant understands that defendant will be required to pay full restitution to the victim(s) of the offense to which defendant is pleading guilty.  Defendant agrees that, in return for the USAO's compliance with its obligations under this agreement, the Court may order restitution to persons other than the victim(s) of the offenses to which defendant is pleading guilty and in amounts greater than those alleged in the count to which defendant is pleading guilty.  In particular, defendant agrees that the Court may order restitution to any victim of any of the following for any losses suffered by that victim as a result: (a) any relevant conduct, as defined in U.S.S.G. § 1B1.3, in connection with the offense to which defendant is pleading guilty; and (b) any counts dismissed pursuant to this agreement as well as all relevant conduct, as defined in U.S.S.G. § 1B1.3, in connection with those counts.  The parties currently believe that the applicable amount of restitution is approximately $382,295.00, but recognize and agree that this amount could change based on facts that come to the attention of the parties prior to sentencing.

7.    Defendant agrees that any and all fines and/or restitution ordered by the Court will be due immediately.  The government is not precluded from pursuing, in excess of any payment schedule set by the Court, any and all available remedies by which to satisfy defendant's payment of the full financial obligation, including referral to the Treasury Offset Program.

8.    Defendant understands that supervised release is a period of time following imprisonment during which defendant will be subject to various restrictions and requirements.  Defendant understands that if defendant violates one or more of the conditions of any supervised

release imposed, defendant may be returned to prison for all or part of the term of supervised release authorized by statute for the offense that resulted in the term of supervised release, which could result in defendant serving a total term of imprisonment greater than the statutory maximum stated above.

9.   Defendant understands that, by pleading guilty, defendant may be giving up valuable government benefits and valuable civic rights, such as the right to vote, the right to possess a firearm, the right to hold office, and the right to serve on a jury. Defendant understands that he is pleading guilty to a felony and that it is a federal crime for a convicted felon to possess a firearm or ammunition.  Defendant understands that the conviction in this case may also subject defendant to various other collateral consequences, including but not limited to revocation of probation, parole, or supervised release in another case and suspension or revocation of a professional license.  Defendant understands that unanticipated collateral consequences will not serve as grounds to withdraw defendant's guilty plea.

10.   Defendant and his counsel have discussed the fact that, and defendant understands that, if defendant is not a United States citizen, the conviction in this case makes it practically inevitable and a virtual certainty that defendant will be removed or deported from the United States.  Defendant may also be denied United States citizenship and admission to the United States in the future. Defendant understands that while there may be arguments that defendant can raise in immigration proceedings to avoid or delay removal, removal is presumptively mandatory and a virtual certainty in this case.  Defendant further understands that removal and

6

immigration consequences are the subject of a separate proceeding and that no one, including his attorney or the Court, can predict to an absolute certainty the effect of his conviction on his immigration status. Defendant nevertheless affirms that he wants to plead guilty regardless of any immigration consequences that his plea may entail, even if the consequence is automatic removal from the United States.

<u>FACTUAL BASIS</u>

11. Defendant admits that defendant is, in fact, guilty of the offense to which defendant is agreeing to plead guilty. Defendant and the USAO agree to the statement of facts provided below and agree that this statement of facts is sufficient to support a plea of guilty to the charge described in this agreement and to establish the Sentencing Guidelines factors set forth in paragraph 13 below but is not meant to be a complete recitation of all facts relevant to the underlying criminal conduct or all facts known to either party that relate to that conduct.

Beginning no later than on or about February 21, 2017, through at least July 18, 2017, defendant knowingly combined, agreed, and conspired with multiple other persons ("coconspirators") to conduct financial transactions into, within, and outside the United States involving property that represented the proceeds of wire fraud and bank fraud. The conspiracy targeted multiple victims and laundered and/or attempted to launder funds obtained from them. Defendant knew that the property represented the proceeds of some form of unlawful activity; and that the transactions to be attempted were designed in whole or in part to conceal or disguise the nature, location, source, ownership, and control of the proceeds. Defendant became a member of the conspiracy knowing of its objects and intending to help

accomplish them.  Multiple members of the conspiracy took steps in furtherance of it, including defendant, as described in the Indictment and further below.

Defendant's coconspirators -- including defendants Valentine Iro (1) and Chukwudi Christogunus Igbokwe (2) -- would communicate with individuals committing fraud ("fraudsters"), or middle-men for fraudsters, who sought bank accounts and money service accounts into which they could fraudulently induce victims to deposit funds. Defendant knew that these fraudulent schemes included what are sometimes referred to as business email compromise ("BEC") frauds, romance scams, and other fraud schemes.  BEC frauds typically involved a hacker gaining unauthorized access to a business email account, and attempting to trick a victim into making an unauthorized wire transfer.  Romance scams generally take advantage of persons looking for romantic partners by targeting victims on dating websites and other social media platforms.  The fraudsters perpetrating these fraud schemes, along with the middle-men, were largely located outside the United States.

At the request of defendant Iro or another coconspirator, defendant would assist another coconspirator in opening a bank account or would himself open a bank account to be used to receive funds from the victim.  If a bank account with a specific business name was requested, defendant would either open the bank account or, at times, have (a) the person referred to in the Indictment as unindicted coconspirator #24 ("UICC 24") or (b) the unindicted coconspirator who opened the Wells Fargo bank accounts referenced in Overt Act No. 287 open accounts that could receive fraudulently obtained funds.  This included the filing of a fictitious business

name statement with the Los Angeles County Registrar/Recorder's Office, which could be done for a small fee.  This step was necessary because banks would often require official documentation showing the business existed before opening the business bank account.

In relation to the scheme to defraud the victims referred to in the Indictment as Je.F. and Jo.F, defendant coordinated with UICC #24 to open a bank account ending in 6217, at Chase Bank, in Los Angeles, on or about February 21, 2017.  On or about April 18, 2017, after Je.F. had been fraudulently induced to sent a wire transfer of $135,800 to the bank account, defendant and defendant Iro discussed whether and when the fraudulently induced payment would arrive in the bank account.  On or about April 19, 2017, defendant and defendant Iro both discussed with each other communicating directly with UICC 24 about the wire transfer, and defendant Iro later told defendant that UICC 24 wanted to return the wire transfer of $135,800 that arrived in the bank account.

In relation to the scheme to defraud the victim referred to in the Indictment as Victim Company 13, defendant Iro asked defendant, on or about July 10, 2017, to open a bank account at Citibank or Wells Fargo in the name of a specific company, referred to in the Indictment in Overt Act No. 220 as "Chinese Company 2."  On or about July 12, 2017, defendant opened a bank account in the name of Chinese Company 2 at a Wells Fargo branch in Los Angeles, and sent the account information to defendant Iro through WhatsApp.  Ultimately, Victim Company 13 was fraudulently induced to send a wire transfer of approximately $382,295 from its account at Abu Dhabi Commercial Bank in Dubai to a Chase Bank account opened by other coconspirators in the name of Chinese Company 2.  The coconspirators then laundered the

funds through a series of transactions through multiple bank accounts created in fictitious business names.

At times, defendant would use WhatsApp to ask defendant Iro or defendant Igbokwe for a bank account that could be used to receive funds fraudulently obtained from a victim of BEC fraud scheme or romance scam.  Defendant made such requests of defendant Iro on or about April 20, 2017 and July 5, 2017, and such requests of defendant Igbokwe on or about July 9 and 16, 2017.  For example, as described in Overt Act No. 418, on or about July 9, 2017, defendant asked defendant Igbokwe to send him the account information for a bank account that could be used to receive funds fraudulently obtained from a victim of a BEC fraud scheme.  Defendant told defendant Igbokwe that he was expecting the fraud victim in the United States to make a payment of $500,000.  In response, defendant Igbokwe sent defendant the account information for a Wells Fargo account ending in 5309, held in the Central District of California, of an unindicted coconspirator, which defendant could use in the scheme.  The information defendant Igbokwe sent included the name of the unindicted coconspirator, the account number, and the routing number.

Defendant admits that he conspired with coconspirators to receive and launder funds to be obtained from Je.F. and Jo.F., Victim Company 13, and the unidentified victim referenced in Overt Act No. 418, and admits the truth of the allegations in the Indictment relating to his involvement in the schemes to defraud these victims and launder funds obtained from them.  Defendant specifically admits the truth of the allegations of the Indictment in Overt Acts 87, 88 and 90 (relating to Je.F. and Jo.F.); Overt Act 220 (relating to Victim Company 13); and Overt Act 418 (relating to the unidentified

intended victim).  Defendant further admits that it was reasonably foreseeable to defendant that the schemes intended to defraud these victims of the amounts listed above.

Once a victim deposited funds into a fraudulently opened bank account, defendant would attempt to withdraw or move the funds, or would coordinate with other coconspirators to withdraw or move the funds, and then to further launder the funds.  If the funds were successfully withdrawn, defendant would keep or receive a percentage of the fraudulent proceeds for his efforts in receiving and laundering the funds.

Defendant admits that the intended and actual money laundering described above was sophisticated.

SENTENCING FACTORS

12.  Defendant understands that in determining defendant's sentence the Court is required to calculate the applicable Sentencing Guidelines range and to consider that range, possible departures under the Sentencing Guidelines, and the other sentencing factors set forth in 18 U.S.C. § 3553(a).  Defendant understands that the Sentencing Guidelines are advisory only, that defendant cannot have any expectation of receiving a sentence within the calculated Sentencing Guidelines range, and that after considering the Sentencing Guidelines and the other § 3553(a) factors, the Court will be free to exercise its discretion to impose any sentence it finds appropriate up to the maximum set by statute for the crime of conviction.

13.  Defendant and the USAO agree to the following applicable Sentencing Guidelines factors:

11

| | | |
|---|---|---|
| Underlying Offense Level: | 7 | [U.S.S.G. §§ 2S1.1(a)(1), |
| | | 2B1.1(a)(1)] |
| Intended value of laundered funds more than $550,000 and less than $1,500,000 | +14 | [U.S.S.G. § 2S1.1(a)(1) and § 2B1.1(b)(1)(H)] |
| Fraud scheme outside the U.S./sophisticated means | +2 | [U.S.S.G. § 2S1.1(a)(1) and §§ 2B1.1(b)(10)(B), (C)] |
| Conviction under 18 U.S.C. § 1956 | +2 | [U.S.S.G. § 2S1.1(b)(2)(B)] |
| Sophisticated laundering | +2 | [U.S.S.G. § 2S1.1(b)(3)] |

Defendant and the USAO reserve the right to argue that additional specific offense characteristics, adjustments, and departures under the Sentencing Guidelines are appropriate.

14.  Defendant understands that there is no agreement as to defendant's criminal history or criminal history category.

15.  Defendant and the USAO reserve the right to argue for a sentence outside the sentencing range established by the Sentencing Guidelines based on the factors set forth in 18 U.S.C. § 3553(a)(1), (a)(2), (a)(3), (a)(6), and (a)(7).

<u>WAIVER OF CONSTITUTIONAL RIGHTS</u>

16.  Defendant understands that by pleading guilty, defendant gives up the following rights:

    a.   The right to persist in a plea of not guilty.

    b.   The right to a speedy and public trial by jury.

    c.   The right to be represented by counsel -- and if necessary have the Court appoint counsel -- at trial.  Defendant understands, however, that, defendant retains the right to be represented by counsel -- and if necessary have the Court appoint counsel -- at every other stage of the proceeding.

12

d.   The right to be presumed innocent and to have the burden of proof placed on the government to prove defendant guilty beyond a reasonable doubt.

e.   The right to confront and cross-examine witnesses against defendant.

f.   The right to testify and to present evidence in opposition to the charges, including the right to compel the attendance of witnesses to testify.

g.   The right not to be compelled to testify, and, if defendant chose not to testify or present evidence, to have that choice not be used against defendant.

h.   Any and all rights to pursue any affirmative defenses, Fourth Amendment or Fifth Amendment claims, and other pretrial motions that have been filed or could be filed.

WAIVER OF APPEAL OF CONVICTION AND COLLATERAL ATTACK

17.   Defendant understands that, with the exception of an appeal based on a claim that defendant's guilty plea was involuntary, by pleading guilty defendant is waiving and giving up any right to appeal defendant's conviction on the offense to which defendant is pleading guilty.

18.   Defendant also gives up any right to bring a post-conviction collateral attack on the conviction or sentence, except a post-conviction collateral attack based on a claim of ineffective assistance of counsel, a claim of newly discovered evidence, or an explicitly retroactive change in the applicable Sentencing Guidelines, sentencing statutes, or statutes of conviction.

19.   Defendant understands that this waiver includes, but is not limited to, arguments that the statute to which defendant is pleading

guilty is unconstitutional, and any and all claims that the statement of facts provided herein is insufficient to support defendant's plea of guilty.

LIMITED MUTUAL WAIVER OF APPEAL OF SENTENCE

20. Defendant agrees that, provided the Court imposes a total term of imprisonment on all counts of conviction of no more than 78 months, defendant gives up the right to appeal all of the following: (a) the procedures and calculations used to determine and impose any portion of the sentence; (b) the term of imprisonment imposed by the Court; (c) the fine imposed by the Court, provided it is within the statutory maximum; (d) to the extent permitted by law, the constitutionality or legality of defendant's sentence, provided it is within the statutory maximum; (e) the amount and terms of any restitution order; (f) the term of probation or supervised release imposed by the Court, provided it is within the statutory maximum; and (g) any of the following conditions of probation or supervised release imposed by the Court: the conditions set forth in General Order 20-04 of this Court; the drug testing conditions mandated by 18 U.S.C. §§ 3563(a)(5) and 3583(d); and the alcohol and drug use conditions authorized by 18 U.S.C. § 3563(b)(7).

21. The USAO agrees that, provided all portions of the sentence are at or below the statutory maximum specified above, the USAO gives up its right to appeal any portion of the sentence, with the exception that the USAO reserves the right to appeal the amount of restitution ordered if that amount is less than $382,295.00.

WAIVER OF RETURN OF DIGITAL DATA

22. Understanding that the government has in its possession digital devices and/or digital media seized from defendant, defendant

14

waives any right to the return of digital data contained on those digital devices and/or digital media and agrees that if any of these digital devices and/or digital media are returned to defendant, the government may delete all digital data from those digital devices and/or digital media before they are returned to defendant.

RESULT OF WITHDRAWAL OF GUILTY PLEA

23.   Defendant agrees that if, after entering a guilty plea pursuant to this agreement, defendant seeks to withdraw and succeeds in withdrawing defendant's guilty plea on any basis other than a claim and finding that entry into this plea agreement was involuntary, then (a) the USAO will be relieved of all of its obligations under this agreement; and (b) should the USAO choose to pursue any charge that was either dismissed as a result of this agreement, then (i) any applicable statute of limitations will be tolled between the date of defendant's signing of this agreement and the filing commencing any such action; and (ii) defendant waives and gives up all defenses based on the statute of limitations, any claim of pre-indictment delay, or any speedy trial claim with respect to any such action, except to the extent that such defenses existed as of the date of defendant's signing this agreement.

24.   Defendant agrees that if the count of conviction is vacated, reversed, or set aside, both the USAO and defendant will be released from all their obligations under this agreement.

EFFECTIVE DATE OF AGREEMENT

25.   This agreement is effective upon signature and execution of all required certifications by defendant, defendant's counsel, and an Assistant United States Attorney.

1

BREACH OF AGREEMENT

2      26.  Defendant agrees that if defendant, at any time after the

3   signature of this agreement and execution of all required

4   certifications by defendant, defendant's counsel, and an Assistant

5   United States Attorney, knowingly violates or fails to perform any of

6   defendant's obligations under this agreement ("a breach"), the USAO

7   may declare this agreement breached.  All of defendant's obligations

8   are material, a single breach of this agreement is sufficient for the

9   USAO to declare a breach, and defendant shall not be deemed to have

10  cured a breach without the express agreement of the USAO in writing.

11  If the USAO declares this agreement breached, and the Court finds

12  such a breach to have occurred, then: (a) if defendant has previously

13  entered a guilty plea pursuant to this agreement, defendant will not

14  be able to withdraw the guilty plea, and (b) the USAO will be

15  relieved of all its obligations under this agreement.

16     27.  Following the Court's finding of a knowing breach of this

17  agreement by defendant, should the USAO choose to pursue any charge

18  that was dismissed as a result of this agreement, then:

19          a.   Defendant agrees that any applicable statute of

20  limitations is tolled between the date of defendant's signing of this

21  agreement and the filing commencing any such action.

22          b.   Defendant waives and gives up all defenses based on

23  the statute of limitations, any claim of pre-indictment delay, or any

24  speedy trial claim with respect to any such action, except to the

25  extent that such defenses existed as of the date of defendant's

26  signing this agreement.

27          c.   Defendant agrees that: (i) any statements made by

28  defendant, under oath, at the guilty plea hearing (if such a hearing

16

occurred prior to the breach); (ii) the agreed to factual basis statement in this agreement; and (iii) any evidence derived from such statements, shall be admissible against defendant in any such action against defendant, and defendant waives and gives up any claim under the United States Constitution, any statute, Rule 410 of the Federal Rules of Evidence, Rule 11(f) of the Federal Rules of Criminal Procedure, or any other federal rule, that the statements or any evidence derived from the statements should be suppressed or are inadmissible.

## COURT AND UNITED STATES PROBATION AND PRETRIAL SERVICES OFFICE NOT PARTIES

28.  Defendant understands that the Court and the United States Probation and Pretrial Services Office are not parties to this agreement and need not accept any of the USAO's sentencing recommendations or the parties' agreements to facts or sentencing factors.

29.  Defendant understands that both defendant and the USAO are free to: (a) supplement the facts by supplying relevant information to the United States Probation and Pretrial Services Office and the Court, (b) correct any and all factual misstatements relating to the Court's Sentencing Guidelines calculations and determination of sentence, and (c) argue on appeal and collateral review that the Court's Sentencing Guidelines calculations and the sentence it chooses to impose are not error, although each party agrees to maintain its view that the calculations in paragraph 13 are consistent with the facts of this case.  While this paragraph permits both the USAO and defendant to submit full and complete factual information to the United States Probation and Pretrial Services

Office and the Court, even if that factual information may be viewed as inconsistent with the facts agreed to in this agreement, this paragraph does not affect defendant's and the USAO's obligations not to contest the facts agreed to in this agreement.

30.  Defendant understands that even if the Court ignores any sentencing recommendation, finds facts or reaches conclusions different from those agreed to, and/or imposes any sentence up to the maximum established by statute, defendant cannot, for that reason, withdraw defendant's guilty plea, and defendant will remain bound to fulfill all defendant's obligations under this agreement.  Defendant understands that no one -- not the prosecutor, defendant's attorney, or the Court -- can make a binding prediction or promise regarding the sentence defendant will receive, except that it will be within the statutory maximum.

NO ADDITIONAL AGREEMENTS

31.  Defendant understands that, except as set forth herein, there are no promises, understandings, or agreements between the USAO and defendant or defendant's attorney, and that no additional promise, understanding, or agreement may be entered into unless in a writing signed by all parties or on the record in court.

//

//

//

1      PLEA AGREEMENT PART OF THE GUILTY PLEA HEARING

2      36.   The parties agree that this agreement will be considered

3 part of the record of defendant's guilty plea hearing as if the

4 entire agreement had been read into the record of the proceeding.

5 AGREED AND ACCEPTED

6 UNITED STATES ATTORNEY'S OFFICE
FOR THE CENTRAL DISTRICT OF

7 CALIFORNIA

8 TRACY L. WILKISON
Acting United States Attorney

9

10 *Devon Myers*               May 10, 2021

    ANIL J. ANTONY                    Date

11 DEVON MYERS
Assistant United States Attorneys

12

                            05-05-21

13 EKENE AUGUSTINE EKECHUKWU    Date
Defendant

14                          5-5-21

15 JAMES R. MEDFORD II        Date
Attorney for Defendant

16 EKENE AUGUSTINE EKECHUKWU

17

18

19                CERTIFICATION OF DEFENDANT

20    I understand, read, and comprehend English, and I have read this

21 agreement in its entirety.  I have had enough time to review and

22 consider this agreement, and I have carefully and thoroughly

23 discussed every part of it with my attorney.  I understand the terms

24 of this agreement, and I voluntarily agree to those terms.  I have

25 discussed the evidence with my attorney, and my attorney has advised

26 me of my rights, of possible pretrial motions that might be filed, of

27 possible defenses that might be asserted either prior to or at trial,

28 of the sentencing factors set forth in 18 U.S.C. § 3553(a), of

1 | relevant Sentencing Guidelines provisions, and of the consequences of
2 | entering into this agreement.  No promises, inducements, or
3 | representations of any kind have been made to me other than those
4 | contained in this agreement.  No one has threatened or forced me in
5 | any way to enter into this agreement.  I am satisfied with the
6 | representation of my attorney in this matter, and I am pleading
7 | guilty because I am guilty of the charge and wish to take advantage
8 | of the promises set forth in this agreement, and not for any other
9 | reason.

10 | _____        _05-05-21_
11 | EKENE AUGUSTINE EKECHUKWU              Date
12 | Defendant

13 | <u>CERTIFICATION OF DEFENDANT'S ATTORNEY</u>

14 |     I am EKENE AUGUSTINE EKECHUKWU's attorney.  I have carefully and
15 | thoroughly discussed every part of this agreement with my client.
16 | Further, I have fully advised my client of his rights, of possible
17 | pretrial motions that might be filed, of possible defenses that might
18 | be asserted either prior to or at trial, of the sentencing factors
19 | set forth in 18 U.S.C. § 3553(a), of relevant Sentencing Guidelines
20 | provisions, and of the consequences of entering into this agreement.
21 | To my knowledge: no promises, inducements, or representations of any
22 | kind have been made to my client other than those contained in this
23 | agreement; no one has threatened or forced my client in any way to
24 | enter into this agreement; my client's decision to enter into this
25 | agreement is an informed and voluntary one; and the factual basis set
26 | //
27 | //
28 | //

25

1   forth in this agreement is sufficient to support my client's entry of

2   a guilty plea pursuant to this agreement.

3

4   _____          _____
    JAMES R. TEDFORD II                      Date   5 - 5 - 21
    Attorney for Defendant
5   EKENE AUGUSTINE EKECHUKWU

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28